FILED
CLERK
3:32 pm, Mar 11, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL K. CARBONE and JANINE CARBONE,
on behalf of plaintiffs and a class,

                    Plaintiffs,

      -against-

GROSS POLOWY LLC,

                    Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-cv-4564 (SJF) (SIL)

FEUERSTEIN, District Judge:

Plaintiffs Michael K. Carbone and Janine Carbone (collectively "Plaintiffs") commenced this putative class action against Gross Polowy LLC ("GPLLC" or "Defendant") alleging that Defendant has used unlawful collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.* Currently before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Docket Entry ("DE") [28]. Plaintiffs have opposed the motion. For the reasons set forth herein, the motion is denied.

**I. BACKGROUND**

**A. Factual Allegations**

The following facts are taken from the complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion. In addition, the Plaintiffs have incorporated by reference in, and attached two documents to, the Complaint: a letter from GPLLC dated July 5, 2017 (the "Letter") and a letter from Caliber Home Loans ("Caliber") offering a Trial Period Plan (the "Caliber Agreement"), referring to them collectively as "Exhibit A" within the body of the complaint.

Plaintiffs are husband and wife who reside in a home they own in Nassau County, New York. Compl." ¶10. GPLLC is a law firm whose practice consists of enforcing the rights of residential mortgage companies including the commencement of actions seeking to foreclose on mortgages. *Id.* ¶¶ 11-12. GPLLC is a debt collector as defined by 15 U.S.C. §1692a(6). *Id.* ¶17.

The loan owed by Plaintiffs, which was in default when GPLLC became involved with it, is secured by their residence "and was obtained for personal, family or household purposes, namely housing." Compl. ¶¶ 15, 18. Plaintiffs claim that GPLLC attempted to collect this debt by sending them Exhibit A on or about July 5, 2017. *Id.* ¶¶18-19. Exhibit A does not contain a "notice of debt" as required by 15 U.S.C. §1692g, nor was such notice sent by GPLLC before or within 5 days after Exhibit A. *Id.* ¶¶22-23. Plaintiffs allege that on the date of the letter, "no foreclosure action was pending, and no foreclosure sale was scheduled." *Id.* ¶24

The one-page Letter, which is on GPLLC letterhead, is dated July 5, 2017 and reads as follows:

> Re: U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST vs. Janine Carbone and Michael Carbone, et al.
> . . .
> On behalf of our client, Caliber Home Loans, Inc. ("Caliber"), Gross Polowy, LLC is reaching out to you with the attached stipulation-to-modification agreement in an effort **to provide an alternative to the current foreclosure action.**
>
> Caliber would like to provide an immediate solution to bring your loan current and avoid foreclosure. Accordingly, the enclosed stipulation-to-modification offer is presented in an effort to provide an affordable loan payment for Ian Orr. The stipulation-to-modification agreement must be signed and returned within thirty (30) days of the date of this letter.
>
> In the event that you are unsatisfied with the stipulation-to-modification offer, please reach out to our law firm at the contact

> number and contact name below, or directly to Caliber at caliberhomeloans.com or at (800)401-6589 for information on how you can submit a loss mitigation application. Please be advised that your loss mitigation application must be completed thirty-seven (37) days or more before your scheduled foreclosure sale to be reviewed.

Compl. Ex. A. (emphasis added). The Letter is signed by Danielle J. Casey and provides her telephone number. The bottom of the letter contains the statement that "[t]he law firm of Gross Polowy, LLC and the attorneys whom it employs are debt collectors who are attempting to collect a debt. Any information obtained by them will be used for that purpose." *Id.*

The Caliber Agreement enclosed with the Letter is on Caliber's letterhead, is dated June 30, 2017, and is addressed only to Michael Carbone. Compl., Ex. A. The Caliber Agreement, which the Letter characterizes as a "stipulation-to-modification agreement," offers a Trial Period Plan for a three-month period. A modification agreement is provided only upon successful completion of the Trial Period Plan.

The Caliber Agreement begins "Congratulations! You are approved for a Trial Period Plan. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter to understand all the steps you need to take to modify your loan." Ex. A. Caliber Agreement. It goes on to compare the current principal and interest payments with a proposed interest only payment, and the current total monthly payment with the proposed total monthly payment. It advises that in order to accept the offer, Michael Carbone must sign the Acknowledgement on page three and return it to Caliber. The following language appears below the signature block:

> THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in

> Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

Caliber Agreement, at 2.

The third page of the Caliber Agreement is entitled "Acknowledgement" and provides a place at the bottom for the borrower(s) to sign. It advises that the first payment is due within 30 days of 8/1/2017, and that if the second or third payments are late, "this offer will be revoked and foreclosure proceedings may continue." The Acknowledgement goes on to state various agreements between the parties, including the following statements relevant here:

> **We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the Trial Period Plan:**
>
> - Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the Trial Period Plan. If you fail to comply with the terms of the Trial Period Plan, a new notice of default, notice of intent to accelerate, notice of acceleration, or similar notices ("foreclosure notices") will not be necessary to continue the foreclosure action. You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law.
> . . .
> - Our acceptance and posting of your payment during the trial period will not be deemed a waiver of the acceleration of your loan (or foreclosure actions) and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.
> . . .

Ex. A. Caliber Agreement, p. 3 (emphasis in original). Only one of two "borrower" signature lines is pre-printed and it is set for the signature of "Michael K. Carbone." *Id.*

4

## B. Procedural History

On August 3, 2017, Plaintiffs commenced this action, asserting claims under two sections of the FDCPA.[1] Under §1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiffs claim that Exhibit A violated §1692e of the FDCPA because it "refers to a foreclosure action when no foreclosure lawsuit is pending." Compl. ¶27. Section 1692g requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" specific information. 15 U.S.C. §1692g(a). Plaintiffs claim in Count II that GPLLC's failure to send a notice of debt prior to or within 5 days after Exhibit A constituted a violation of §1692g of the FDCPA.

Defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief. GPLLC contends that the Letter is not an attempt to collect a debt and thus is not governed by the FDCPA.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009). A

---

[1] Although the heading for each count designates it as a "FDCPA – CLASS CLAIM," each count appears to be stating both individual and class claims.

plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120-21 (2d Cir. 2010). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Factual allegations must be enough to raise a right to relief above the speculative level, "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss for failure to state a claim, the court accepts as true all of the factual allegations contained in the complaint, and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *Warren v. Colvin,* 744 F.3d 841, 843 (2d Cir. 2014); *see also Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). Although factual allegations are assumed to be true, this principle is "inapplicable to legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

**B. FDCPA**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). Its legislative

6

history "explains that the need for the FDCPA arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S.Rep. No. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)). "Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (internal quotations marks and citation omitted).

Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. §1692a(3). "Debt collectors that violate the FDCPA are strictly liable, meaning that a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. §1692a(2). The scope of the term 'communication' should be broadly construed "consistent with Congress's intent in enacting the FDCPA." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 655 (S.D.N.Y. 2006).

## III. DISCUSSION

Both §1692e and §1692g require that the representation or communication at issue be made "in connection with the collection of any debt." 15 U.S.C. §1692e; §1692g(a); *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (in determining liability under

§1692g, a court evaluates, *inter alia,* "whether any of the communications between the parties were 'in connection with the collection of any debt'"). Defendant's lone argument is that as the Letter is offering to modify the mortgage, it is not debt collection activity and thus does not implicate the FDCPA.

Liability under the FDCPA is defined "in terms of whether the debt collector's communication with the consumer is *in connection with* that consumer's obligation to pay money." *Cohen v. Rosicki, Rosicki & Assocs., P.C.,* 897 F.3d 75, 83 (2d Cir. 2018) (emphasis in original). Whether a communication is "'in connection with the collection of [a] debt' is a question of fact to be determined by reference to an objective standard." *Hart v. FCI Lender Servs., Inc.,* 797 F.3d 219, 225 (2d Cir. 2015) (alteration in original). When performing this objective analysis, the Court views the communication from the perspective of the Least sophististicated consumer. This standard is "an objective analysis that seeks to protect the naïve from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (internal quotation marks and citation omitted). The intent or purpose of the sender is not the focus – "if a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled" to the FDCPA's protections. *Hart,* 797 F.3d at 225.

Defendant argues that upon application of factors identified by the Second Circuit, the Letter is not a communication in connection with the collection of a debt. In *Hart,* the Second Circuit determined that "an *attempt* to collect a debt" is a communication in connection with the collection of a debt, and decided under the facts of that case that the letter constituted such an attempt. *Hart,* 797 F.3d at 226 (emphasis in original). In reaching that decision, the Court noted

four factors about the letter in question: it referenced the plaintiff's particular debt, directed him to mail payments to defendant, referred to the FDCPA by name, and "most importantly," the letter "emphatically announce[d] itself as an attempt at debt collection by stating "THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. *Id.* In a subsequent case, the Second Circuit discussed the *Hart* factors and found that those factors, "dispositive in *Hart,* are similarly instructive here and demonstrate" that plaintiff adequately pleaded that the Letter at issue "was sent in connection with the collection of a debt." *Carlin,* 852 F.3d at 215. Applying the *Hart* factors here, Defendant notes that only one factor is satisfied – the presence of a statement that defendant is a debt collector "attempting to collect a debt. Any information obtained by [it] will be used for that purpose," and thus, Defendant argues, the Letter is not a communication sent in connection with the collection of a debt.

Significantly, there is nothing in either *Hart* or *Carlin* to suggest that the Second Circuit intended the factors considered in those cases to represent an exhaustive list of factors to be examined to determine whether a communication was sent in connection with the collection of a debt. The content of communications presented in FDCPA cases vary widely and as such, are not susceptible to a formulaic application of a specific set of factors. Given that the FDCPA's protections are to be broadly construed, additional factors may be considered to the extent that they implicate the broader question of whether the communication is an attempt to collect a debt. *See generally Kraus v. Prof'l Bureau of Collections of Md., Inc.*, 281 F. Supp. 3d 312, 319 (E.D.N.Y. 2017) (finding that a letter offering to settle a debt qualifies as a communication sent in connection with the collection of a debt, and noting that the letter "also bears additional hallmarks" citing *Hart* and *Carlin*); *but see Hayles v. Aspen Properties Grp., LLC,* No. 16 Civ.

9

8919, 2017 WL 3602027, at *5 (S.D.N.Y. Aug. 21, 2017) (finding that plaintiff failed to plausibly allege that letter was sent in connection with the collection of a debt where it contained "clear language regarding a mortgage modification offer and lack[ed] three of the four characteristics that the Second Circuit has identified as relevant to the inquiry"), *appeal docketed,* No. 18-2683 (2d Cir. Sept. 11, 2018). Courts in other Circuits addressing whether a communication was sent in connection with the collection of a debt have looked not only at the factors identified in *Hart,* but have also examined additional factors including, for example, (a) "the nature of the relationship of the parties," (b) "whether the communication was sent in response to an inquiry or request by the debtor," (c) "whether the statements were part of a strategy to make payment more likely;" and (d) "whether it threatened consequences should the debtor fail to pay." *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015); *see also Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (courts should "look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the law firm was attempting to collect a debt and was acting as a debt collector."); *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir. 2010) ("the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt").

Here, both the Letter and the Caliber Agreement contain clear language advising Plaintiffs that a debt collector was attempting to collect a debt. Although the communications do not contain the other *Hart* factors, the alleged misrepresentations about a non-existent foreclosure action are appropriately considered in determining whether Exhibit A was a communication sent in connection with collection of a debt. The Letter implicitly demands

repayment of the debt, albeit under revised terms, and threatens Plaintiffs with foreclosure, or continuation of a foreclosure action, should they fail to comply. The threatened consequence of foreclosure is contained in both the Letter and the Caliber Agreement, which imposes strict time limits for compliance. Defendant's intention in sending the Letter is irrelevant; to a reasonable consumer, the purpose of the Letter is clear – pay the debt or face foreclosure.

Furthermore, "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Plaintiffs allege that there was no foreclosure action pending as of the date of the Letter, yet the Letter references a case caption and talks of "the current foreclosure action" and "your scheduled foreclosure sale." The Caliber Agreement also includes clear language regarding a pending foreclosure action. Plaintiffs have plausibly alleged that Defendant has made actionable misrepresentations about the debt and its legal status.

## IV. CONCLUSION

Viewing the Letter from the perspective of a reasonable consumer, Exhibit A is an attempt to collect a debt and therefore is a communication sent in connection with the collection of a debt under the FDCPA. Accordingly, Defendant's motion to dismiss, DE [28], is denied. **SO ORDERED**.

      /s/
Sandra J. Feuerstein
United States District Judge

Dated: March 11, 2019
      Central Islip, New York